1  SEAN K. KENNEDY (No. 145632)
   Federal Public Defender
2  (E-mail:  Sean_Kennedy@fd.org)
   FIRDAUS F. DORDI (No. 186831)
3  (E-mail: Firdaus_Dordi@fd.org)
   Deputy Federal Public Defender
4  321 East 2nd Street
   Los Angeles, California  90012-4202
5  Telephone (213) 894-2808
   Facsimile (213) 894-0081
6

7  Attorneys for Defendant
   **MIGUEL ALEXANDER FRANCO LARA**
8

9

                    UNITED STATES DISTRICT COURT
10

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | NO. CR-13-34-VAP |
| | ) | |
| Plaintiff, | ) | **DEFENDANT MIGUEL** |
| | ) | **ALEXANDER FRANCO** |
| v. | ) | **LARA'S POSITION RE:** |
| | ) | **SENTENCING; EXHIBITS** |
| **MIGUEL ALEXANDER FRANCO** | ) | |
| **LARA**, | ) | |
| | ) | Sentencing Date:  Sept. 9, 2013 |
| Defendant. | ) | Sentencing Time: 9:00 a.m. |

21        Defendant Miguel Alexander Franco Lara (hereinafter "Mr. Franco Lara"),

22  by and through his counsel of record, Deputy Federal Public Defender Firdaus F.

23  Dordi, hereby submits his position regarding sentencing in this matter.

24

25                              Respectfully submitted,

26                              SEAN K. KENNEDY
                                Federal Public Defender
27

28  DATED: August 29, 2013       By___/s/_ *Firdaus F. Dordi*____
                                  FIRDAUS F. DORDI
                                  Deputy Federal Public Defender

1    **I.      INTRODUCTION**

2            The parties agree that the appropriate sentence in this case is 30 months, as

3    this is not a typical possession of child pornography case.  Mr. Franco Lara

4    possessed five or less images of a single minor, C.V.  The minor was sixteen at the

5    time, which is the age of consent in Nevada.  *See* NEV. REV. STAT. 200.364(5)

6    (2009).  Mr. Franco Lara did not directly solicit the minor to send him the images at

7    issue in this case.  The images in question were not on his home computer; they were

8    on his cell phone.  Mr. Franco Lara did not possess any other pornography, let alone

9    child pornography.

10           Mr. Franco Lara did not intend to have a sexual relationship with C.V.  He

11   was experiencing marital problems and, in a moment of weakness, he confided the

12   problems he was having to C.V.  She was young, misunderstood by people close to

13   her, and looking for a mature relationship.  They seemed to find an understanding

14   from the other that was lacking in both their lives.  Their friendship evolved into

15   something more, although neither of them expected that to happen.  Once their

16   relationship became romantic, they made it known to their family members.  Both of

17   them thought they were in love.  Mr. Franco Lara has since realized the extent of his

18   bad judgment, and is very sorry for any harm he has caused C.V. and her family.

19   *See* Exhibit A, Letter of Miguel Alexander Franco Lara.

20           The Probation Officer has calculated the guidelines consistent with the

21   parties agreement reflected in the plea agreement: base offense level 18; a 5-level

22   enhancement for two or more instances of exploitation of the same minor; a 2-level

23   enhancement for use of a computer or interactive computer service; and a 3-level

24   downward adjustment for acceptance of responsibility.  *See* Pre-sentence Report

25   ("PSR"), at ¶¶ 14-22; Plea Agreement, at ¶ 13.  Mr. Franco Lara is in criminal

26   history category (CHC) I.  The corresponding range to total offense level 22 and

27   CHC I is 41-51 months.  The Probation Officer has recommended a sentence at the

28

1   low end of that range.  For the reasons discussed herein, as well as those cited by the

2   government, the parties submit that a 30-month sentence is appropriate.

3

4   **II.      ARGUMENT**

5        **A.      <u>The Court Must Impose the Least Punitive Sentence That Fulfills</u>**

6               **<u>the Goals of Sentencing</u>**

7        The Sentencing Guidelines are no longer mandatory, *United States v.*

8   *Booker*, 543 U.S. 220 (2005), and a "district court may not presume that the

9   Guidelines range is reasonable," *United States v. Carty*, 520 F.3d 987, 991 (9th Cir.

10  2008) (en banc); *see Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465

11  (2007).  The Guidelines are entitled to no more weight than any of the other 18

12  U.S.C. § 3553(a) sentencing factors.  *Carty*, 520 F.3d at 991; *United States v.*

13  *Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006).  In the post-*Booker* world, this

14  Court is required to fashion an individualized sentence that is appropriate when

15  taking into account *all* of the § 3553(a) factors.  *Gall v. United States*, 552 U.S. 38,

16  128 S. Ct. 586, 596-97 (2007); *Carty*, 520 F.3d at 991, 995.

17        Indeed, under section 3553(a), this Court *must* sentence below the advisory

18  Guideline range if such a sentence would be sufficient to achieve the statutory

19  purposes of sentencing.  That is because the *overarching duty* imposed on the Court

20  is to arrive at a sentence sufficient but not greater than necessary to achieve the goals

21  of sentencing.  *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85,

22  128 S. Ct. 558, 575 (2007); *Carty*, 520 F.3d 994-95.  In *Kimbrough*, the Supreme

23  Court stressed that the parsimony principle—that a sentence must be sufficient but

24  not greater than necessary to achieve the goals of sentencing—is the most important

25  overall factor in a court's sentencing decision.  *Kimbrough*, 128 S. Ct. at 575.  The

26  *Kimbrough* Court held that the district court "appropriately framed its final

27  determination in line with § 3553(a)'s *overarching instruction* to 'impose a sentence

28

1   sufficient, but not greater than necessary' to accomplish the sentencing goals

2   advanced in § 3553(a)(2)." *Id.* (emphasis added); *see Carty* 520 F.3d at 994.

3          Through this directive of parsimony, Congress embedded in federal

4   sentencing legislation the moral imperative to impose on any individual the least

5   suffering that is demanded by the general welfare.  After *Booker*, a Guidelines

6   sentence may not be "necessary" to comply with the purposes of sentencing.

7   Consideration of the advisory Guidelines range is subordinate to the overarching

8   mandate that the punishment not be greater than necessary.

9          It is also critical for the Court to understand that its charge is emphatically

10  *not* to impose a "reasonable" sentence, but to impose a particularized sentence

11  minimally sufficient to accomplish the statutory purposes of sentencing.  *See Carty*,

12  520 F.3d at 995 ("The district court must make an individualized determination

13  based on the facts.")  The question of reasonableness is for appellate review.  *See*

14  *Rita*, 551 U.S. at 351.

15

16      **B.      The Advisory Guidelines for Possession of Child Pornography Are**

17               **Entitled to Little Weight Because They Do Not Represent a**

18               **Reasoned Judgment Based on Empirical Evidence and National**

19               **Experience**

20         The advisory Guidelines in this case fail to reflect the factors that this Court

21  is required to consider under § 3553(a) in imposing a sentence, and that fact is

22  relevant to the sentencing analysis.  *See Rita*,551 U.S. at 351 (holding that a district

23  court is permitted to consider that "the Guidelines sentence itself fails to properly

24  reflect § 3553(a) considerations").  The problem is more than just a failure to reflect

25  the appropriate sentence in Mr. Franco Lara's case.  There is a systemic problem

26  with the advisory Guidelines for child pornography crimes similar to the one

27  recognized by the Supreme Court in *Kimbrough*.  And as in *Kimbrough*, this

28

4

1  underlying deficiency means that the advisory Guidelines are entitled to little or no
2  weight in the sentencing calculus.

3      In *Kimbrough*, the Supreme Court explained that, in most cases, the advisory
4  Guidelines "reflect a rough approximation of sentences that might achieve §
5  3553(a)'s objectives" because they are based on the Sentencing Commission's
6  "expert evaluation of empirical data and national experience."  *Kimbrough*, 128 S.
7  Ct. at 574 (internal quotation marks omitted).  By contrast, when the Guidelines do
8  not reflect the expertise of the Commission, but rather are based on congressional
9  directives, they are less likely to suggest a sentence that satisfies the requirements of
10 section 3553(a), *even in a "mine-run" case*.  *Id* at 575 (emphasis added).

11     As one district court explained, the logic of *Kimbrough* is directly applicable
12 to the possession of child pornography guideline.  *See United States v. Sudyka*, 2008
13 WL 1766765, *4-5  (D. Neb. Apr. 14, 2008) (unpublished).  In *Sudyka*. the court
14 calculated a guideline range that exceeded the statutory maximum sentence
15 permitted by law for the offense based on a total offense level of 33 and a criminal
16 history category of  I.  The advisory guideline range was 135-168 months, and the
17 maximum sentence permitted by law was 120 months.  In determining a sentence
18 that was no greater than necessary to achieve the goals of sentencing, the court in
19 *Sudyka* cited to *Kimbrough* and considered the fact that, because "the child
20 pornography Guidelines are statutorily-driven, as opposed to empirically grounded .
21 . . the Guidelines ranges of imprisonment are a less reliable appraisal of a fair
22 sentence."  *Id.* at *8.  The court elaborated:

23     The Guidelines for child exploitation offenses, like the drug-trafficking
24     Guidelines [at issue in *Kimbrough*], were not developed under the empirical
25     approach, but were promulgated, for the most part, in response to statutory
26     directives.  The Commission itself acknowledges that the frequent mandatory
27     minimum legislation and specific directives to the Commission to amend the
28

1          Guidelines make it difficult to gauge the effectiveness of any particular

2          policy change, or to disentangle the influences of the Commission from those

3          of Congress.

4          . . .

5          Congress has passed numerous laws of increasing severity that

6          regulate child pornography and exploitation of children. . . .  In 2004,

7          the Sentencing Commission responded to Congressional directives

8          by collapsing the guideline dealing with possession (formerly

9          U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of

10         pornography (U.S.S.G. § 2G2.2).  The Commission also afforded

11         expansive coverage to the meaning of "distribution" [under the

12         Guidelines] and applied significant quantity-driven enhancements for

13         the number of images possessed, received or distributed in U.S.S.G.

14         § 2G2.2(b)(7)(A)-(D).

15  *Id.* at *5-6. (alteration, internal quotation marks, footnote, and citations omitted).

16  These changes were not derived from empirical analysis or feedback in the form of

17  district court sentencing practices and patterns.  When Guidelines are not the result

18  of "the Commission's exercise of its characteristic institutional role," such as when

19  they are not based on an empirical approach, but are instead keyed to or guided by

20  statutory directives, a court is not presented with the "ordinary case," in which "the

21  Commission's recommendation of a sentencing range will 'reflect a rough

22  approximation of sentences that might achieve § 3553(a)'s objectives.'"  *Id.* at 4.

23  *See, e.g.*, *Kimbrough*, 552 U.S. at 109 ( quoting *Rita*, 551 U.S. at 350); *see also Gall*,

24  552 U.S. at 46 n. 2 (noting that not all Guidelines are tied to empirical evidence,

25  most notably, those for drug offenses).

26        The United States Supreme Court found that the district court may vary

27  downward from the advisory guideline range solely on district court's disagreement

28

1    with the policy view of the Guidelines. *Spears v. United States*, 555 U.S. 261, 265-

2    66, 129 S. Ct. 840 (2009). The district court's policy disagreement in *Spears*

3    stemmed from its rejection of the 100:1 ratio between crack cocaine and powdered

4    cocaine. To clarify any ambiguity, the Supreme Court, ruled that "district courts are

5    entitled to reject and vary categorically from the crack-cocaine Guidelines based on

6    a policy disagreement with those Guidelines." *Id.*

7        The court in *Sudyka* further noted that "former section 2G2.4 provided a base

8    offense level of 15, which would generate a sentencing range of 18 to 24 months at

9    Criminal History Category I," *id.* at *6, n.1, and that the revised Guidelines

10   enhancements doubled Sudyka's offense level from level 18 to level 36 and

11   increased his advisory sentencing range from 27-33 months to 188-235 months,

12   before accounting for acceptance of responsibility, resulting in a seven-fold increase

13   and a "tail wagging the dog" situation. *Id.* at *9. These factors were relevant to the

14   *Sudyka* court's consideration of the value to be accorded the advisory Guidelines

15   range.

16       In 1997, child pornography offenders[1] received a mean sentence of 20.59

17   months confinement.[2] *See* Federal Justice Statistics Resource Center, "*Type of*

18   *sentence for defendants convicted*," available at http://fjsrc.urban.org/tsec.cfm. In

19   2007, defendants sentenced for the same conduct received a mean sentence of 91.30

20   months confinement. *Id.* This represents a 443% increase in the mean imposed

21   sentence for this class of offenders. This statistic is even more staggering when

22

23       [1] In 1997, persons convicted in federal court for possessing, receiving, or
24   distributing child pornography in violation of 18 U.S.C. Sections 2252 or 2252A, but
     who were not involved in the production or attempted production of child
25   pornography. This correlates to an offender punished pursuant to Guideline Section
     2G2.2 of the 2008 Federal Sentencing Guidelines.

26       [2] Calculated as follows: 183 defendants received a mean sentence of 26.79
27   months confinement, while 55 defendants received a sentence of probation (0 months
     confinement). The "Total Mean" for all 238 defendants: $(183\times26.79) + (55\times0) =$
28   $4902.57/238 = 20.59$.

considered in light of the fact that of the 1,025 sentences under § 2G2.2 in Fiscal
Year 2007, 351 involved downward departures or variances, of which 219 were pure
"Booker" variances).  *See* Sourcebook of Federal Sentencing Statistics 2007, at
Table 28, http://www.ussc.gov/ANNRPT/2007/SBTOC07.htm.  Despite federal
judges' high ration (34%) of sentences below the initially applicable Guidelines, the
mean sentence soared by 13.26 months when compared with similar defendants
sentenced in Fiscal Year 2006.  *Cf.* 2006 Sourcebook, available at
http://www.ussc.gov/ANNRPT/2006/SBTOC06.htm.

The incredible increase of confinement periods, almost six additional years
per defendant from a decade ago, is the not the product of an empirically
demonstrated need for consistently tougher sentences of such offenses.  Instead, the
changes are largely the consequences of numerous morality earmarks, slipped into
larger bills, over the last fifteen years, often without notice, debate, or empirical
study of any kind.  In fact, congressionally mandated changes were even enacted to
prevent the Commission from implementing carefully considered modifications
which would have *lowered* offense levels.

In June 1996, the Sentencing Commission presented a detailed, forty-two
page report to Congress.  *See* Report to Congress, *Sex Offenses Against Children,
Findings and Recommendations Regarding Federal Penalties* (1996), at 1, available
at http://www.ussc.gov/r_congress/SCAC.HTM.  The report opened by observing
that "[p]enalties for sex offenses against children have been increased several times
in recent years and are quite severe."  *Id.*  The primary focus of the report was on the
"most dangerous offenders."  *Id.*  The defendants towards whom the strongest
comments and recommendations in the 1996 report were targeted, the "large scale
commercial pornographers," and "the most dangerous repeat offenders," have almost
no relation to the typical defendant sentenced under § 2G2.2.  In 2006, 79.9% of all
child pornography defendants (those sentenced under § 2G2.2 and § 2G2.4), had no

1  prior felonies of any kind, let alone a criminal history of past "sexual abuse or

2  exploitation."  Yet, their sentences are approximately 380% greater than those of

3  persons sentenced in 1997 (mean sentence in 1997 was 20.59 months, mean sentence

4  in 2006 was 78.04 months).   Ironically, the Commission thought the penalties for

5  child pornography offenses were "quite severe" in 1996 when they were 400% less

6  than they are today.

7          The 2003 Amendments and the repeal of 2G2.4 in 2004 and collapsing the

8  simple possession offense into U.S.S.G. § 2G2.2, with three other offenses (1)

9  trafficking in material involving the sexual exploitation of a minor; (2) receiving,

10  transporting, shipping, soliciting or advertising material involving the sexual

11  exploitation of a minor; and (3) possessing material involving the sexual exploitation

12  of a minor with intent to traffic, the Commission not only increased the base offense

13  level for simple possession, but subjected the offense to numerous enhancements

14  that would apply in virtually every case.  Even the Commission notes that there are

15  "several specific offense characteristics which are expected to apply in almost every

16  case (e.g. use of computer, material involving children under 12 years of age,

17  number of images)." *See* Amendment 664 to United States Sentencing Guidelines,

18  (November 1, 2004).

19          Congress set the statutory maximum for first-time child pornography

20  possessors at ten years. The majority of persons in criminal history category I now

21  face guideline ranges closer to the statutory maximum than the minimum.  These

22  sentences are not only illogical, but they also run afoul of fundamental Guideline

23  policy—providing harsher penalties to individuals with more significant criminal

24  scores while still retaining an incentive for pleas at all criminal history levels.

25          According to the Sentencing Commissions Report titled, *Use of Guidelines*

26  *and Specific Offense Characteristics: Fiscal Year 2007*, available at

27  http://www.ussc.gov/gl_freq/07_glinexgline.pdf, and the *Sourcebook of Federal*

28

9

1  *Sentencing, 2007*, available at http://www.ussc.gov/ANNRPT/2007/SBTOC07.htm,

2  of those defendants sentenced pursuant to § 2G2.4 for possession of child

3  pornography, over 90% used a computer to obtain a prohibited image, over 90%

4  possessed a picture depicting a prepubescent minor, over 30% possessed an image

5  that is considered sadistic or masochistic, and over 60% received a number of

6  images enhancement, with over 20% receiving the more than 600-image

7  enhancement. *Id.* Only one of these three very common enhancements—the use of

8  a computer—applies[3] to Mr. Franco Lara, further demonstrating by empirical data

9  that his case is out of the heartland of cases covered by this guideline.

10       The collapse of § 2G2.4 into § 2G2.2 fails to account for the difference in the

11  spectrum of offenses now covered by § 2G2.2. The Sentencing Commission itself

12  has recognized that the possession of child pornography guideline is a "blunt

13  hammer" and not a "finely-tuned system of apportioning punishment." United

14  States Sentencing Commission, *Report to Congress: Sex Offenses Against Children,*

15  *Findings and Recommendations Regarding Federal Penalties* (1996), at 30,

16  available at http://www.ussc.gov/r_congress/SCAC.HTM. The Court's obligation

17  under *Booker*, however, is specifically to impose a finely tuned sentence based on all

18  of the information available about Mr. Franco Lara.

19       In her comments to the United States Sentencing Commission on January 20,

20  2010, then Chief Judge of the Central District of California, the Hon. Audrey B.

21  Collins, addressed the issue of revising the sentencing guidelines for defendants

22  convicted of possession of child pornography. Then Chief Judge Collins, speaking

23  on behalf of the Judges of the Central District of California, commented that the

24  Guidelines applicable to these cases are "not well-designed," especially in the cases

25

26      [3] Mr. Franco Lara did not use a "computer" or "interactive computer service" as defined by the 47 U.S.C. § 230(f)(2), but rather a smart phone. Although he does

27  not object to whether the 2-level enhancement pursuant to § 2G2.2(b)(6) is technically applicable due to the plea agreement, the facts in his case are undoubtedly atypical

28  when compared to the heartland of cases.

1   of "those defendants accused only of owning child pornography, and not its creation

2   or distribution."  Then Chief Judge Collins specifically recommended the

3   elimination of three enhancements as they apply to virtually every case and are

4   essentially rendered meaningless: (1) use of a computer; (2) possession of material

5   involving a prepubescent minor; and (3) an increase based on the number of images.

6   *Id.*  Only the first of these three enhancements applies to Mr. Franco Lara.  Absent

7   this enhancement, Mr. Franco Lara would be at total adjusted offense level of 20,

8   and the low end of his guideline range would be 33 months instead of 41 months,

9   cutting his advisory Guideline sentence by approximately 20%.

10          As in *Kimbrough* and *Spears*, the advisory Guidelines do not reflect a "rough

11   approximation" of a reasonable sentence in a "mine-run" possession of child

12   pornography case, and should therefore be accorded little or no weight.  And, as

13   discussed below, they especially do not reflect an appropriate sentence in Mr. Franco

14   Lara's case, which is not the "mine-run" case, when all of the section 3553(a) factors

15   are taken into consideration.

16

17          **C.      Analysis of Relevant 3553(a) Factors**

18                  1.      Nature and Circumstances of Offense/Just Punishment/Adequate

19                          Deterrence/Community Protection

20          The instant offense is undeniably serious in nature.  However, a sentence in

21   the instant case of 30 months imprisonment—which will likely be followed by

22   removal proceedings—certainly appears to be sufficient to reflect the serious nature

23   of the offense.  Mr. Franco Lara has never been to prison.  Moreover, he has been a

24   lawful permanent resident for over 25 years.  PSR, at ¶ 42.  In that time, he has had

25   very little contact with El Salvador, a country he left when he was a teenager.  All

26   his immediate family resides in the United States, including his mother, sisters, wife,

27   children, and nieces.

28

1    In addition, there are a number of factors that take the instant case outside of

2    the heartland of cases covered by the statutes and sentencing guidelines implicated

3    in the instant case.  Perhaps most importantly, Mr. Franco Lara had images of only

4    one minor, C.V.  Second, he possessed a total of five or less images.  Third, Mr.

5    Franco Lara did not directly solicit the images C.V. sent him.  Fourth, C.V. had

6    attained the age of consent in Nevada, the state in which they were both residing

7    when their sexual relationship commenced.  Fifth, Mr. Franco Lara was open about

8    his relationship with C.V., and both their families knew about it.  Sixth, he did not

9    possess any other pornography or child pornography.

10    Obviously, Mr. Franco Lara's arrest slapped him awake to the reality of the

11    situation in which he found himself.  Given the benefit of hindsight, Mr. Franco Lara

12    clearly understands that it was wrong for him to allow his relationship with C.V. to

13    progress to any level beyond a mere friendship.  However, Mr. Franco Lara did not

14    befriend C.V. in an effort to take advantage of her age and relative lack of maturity.

15    Instead, the two bonded and became friends over their mutual problems and the

16    corresponding feelings of loneliness and despair that they were both experiencing at

17    that time in their respective lives.  The sanction of a considerable period of

18    incarceration followed by likely removal from the United States serve the goals of

19    general and specific deterrence as well as retributive punishment and protection of

20    the community.

21    Mr. Franco Lara has gained deep insight into his conduct and learned from it.

22    He understands the pain and anguish he has caused C.V., her family, and his family.

23    He has asked them for their forgiveness.  *See* Exhibit A, Letter of Miguel Alexander

24    Franco Lara.

25    2.    History and Characteristics

26    Mr. Franco Lara is 45 years old.  PSR, at ¶ 38.  He was born in El Salvador

27    and immigrated to the United States when he was a teenager.  *Id.*  His father is

28

1    deceased.  His mother and each of his three sisters reside in the United States, as

2    does his wife of 21 years and their children.  *Id.* at ¶¶ 40-41 and 44-45.

3           Until his arrest, he was gainfully employed, leaving a position only when he

4    had a better position in terms of responsibility and wages.  *Id.* at ¶¶ 56-62.  On pre-

5    trial supervision, Mr. Franco Lara again demonstrated that he was able to gain

6    employment to continue to assist his family.  *Id.* at ¶ 55.

7           In 2005, he was diagnosed with diabetes and high blood pressure.  *Id.* at ¶

8    49.  So far, he has been able to control both these ailments with diet alone.  *Id.*

9           Mr. Franco Lara's family describe him as an excellent father, son, brother

10   and uncle.  *See generally*, Exhibits B-G, Letter of Vilma G. Franco (sister), Letter of

11   Marta Salazar (sister), Letter of Myra Franco (sister), Letter of Elia Lara de Cornejo

12   (mother), Letter of Luz Maria Lopez (wife), Letter of Blessy Giron (niece), Letter of

13   Erika Giron (niece), and Letter of Jennifer Lopez.  They also describe the support,

14   both emotional and financial, that he has provided for them.  His wife, Luz, has

15   forgiven him, and they have begun to repair their relationship.  Mr. Franco Lara was,

16   and remains, very close to his family, and they continue to support him.

17          The likelihood of removal following incarceration will be very difficult on

18   Mr. Franco Lara and his family.

19

20   **III.    CONCLUSION**

21          For the foregoing reasons, Mr. Franco Lara respectfully requests the Court

22   follow the recommendation of the parties and sentence him to 30 months.

23                                              Respectfully submitted,

24
                                                SEAN K. KENNEDY
25                                              Federal Public Defender

26
     DATED:  August 29, 2013              By___/s/_*Firdaus F. Dordi*___
27                                              FIRDAUS F. DORDI
                                                Deputy Federal Public Defender
28

PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen years; that I am not a party to the above-entitled action; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served the:

**Miguel Alexander Franco Lara's Position Regarding Sentencing; Exhibits**

On August 29, 2013, following ordinary business practice, service was:

[ X] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows:

[  ] By hand-delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[  ] By facsimile as follows:

Jill Harfield
U.S. Probation Officer
5500 Telegraph Rd., Suite 241
Ventura, California 93003

This proof of service is executed at Los Angeles, California, on August 29, 2013.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*/s/ Rosalinda Lozano*
Rosalinda Lozano