CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JELANI J. LINDSEY (Bar No. 280092)
Deputy Federal Public Defender
(E-Mail: jelani_lindsey@fd.org )
Deputy Federal Public Defender
321 E. 2nd Street
Los Angeles, California 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MIGUEL ALEXANDER FRANCO-LARA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>          v.<br><br>MIGUEL ALEXANDER FRANCO-LARA,<br><br>                 Defendant. | Case No. ED CR13-00034-VAP<br><br>**MIGUEL ALEXANDER FRANCO-LARA'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION;EXHIBITS** |

# TABLE OF CONTENTS

**(Page)**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

I. INTRODUCTION .............................................................................................. 2

II. BACKGROUND ............................................................................................... 2

III. ARGUMENT ................................................................................................... 3

    A.     Mr. Franco-Lara's Post-Release Conduct Warrants Early Termination. .................................................................................... 4

    B.     Mr. Franco-Lara Has Fully Reintegrated into Society with a Support Systems Separate from the United States Probation Officer. ........................................................................................ 5

        1.     Mr. Franco-Lara's Conduct Provides Strong Evidence That He Will Not Recidivate. .......................................... 5

        2.     Mr. Franco-Lara Is Unlikely to Recidivate Because He Is 54 Years Old, Has a Minimal Criminal History, and Must Continue to Register as a Sex Offender ..................... 6

        3.     Mr. Franco-Lara's Support System Will Ensure That He Does Not Recidivate. ............................................... 8

    C.     Forgiveness Is in the Interests of Justice ....................................... 9

IV. CONCLUSION ............................................................................................... 10

i

# TABLE OF AUTHORITIES

**(Pages)**

## Federal Cases

*United States v. Brown*,
  No. 3:10-CR-418, 2021 WL 2324676 (N.D. Ohio June 2, 2021) ........................ 3, 10

*United States v. Cunningham*,
  No. 05CR2137-LAB, 2014 WL 3002207 (S.D. Cal. July 1, 2014) .......................... 9

*United States v. Emmett*,
  749 F.3d 817 (9th Cir. 2014) ........................................................................... 3

*United States v. Harris*,
  258 F. Supp. 3d 137 (D.D.C. 2017) ............................................................... 3, 5

*United States v. Mauldin*,
  No. CR 18-371 (BAH), 2020 WL 2840055 (D.D.C. June 1, 2020) ..................... 4, 5

*United States v. McGovern*,
  438 F. Supp. 3d 136 (D.P.R. 2020) ............................................................... 3, 8

*United States v. Michaels*,
  No. CR.A. 93-215-01, 2001 WL 1486215 (E.D. Pa. Nov. 6, 2001) ...................... 9

*United States v. Murray*,
  692 F.3d 273 (3d Cir. 2012) .............................................................................. 5

*United States v. Raymond*,
  No. CR 09-183 (RMC), 2019 WL 1858285 (D.D.C. Apr. 25, 2019) ...................... 4

*United States v. Shaw*,
  445 F. Supp. 3d 1160 (D. Colo. 2020) ........................................................... 3, 8

*United States v. Suibin Zhang*,
  No. 05-CR-00812-RMW-1, 2018 WL 11203669 (N.D. Cal. Jan. 26,
  2018) ....................................................................................................... 3, 4, 9

## Federal Statutes

18 U.S.C. § 2242(b) .............................................................................................. 2

18 U.S.C. §§ 2252(A)(a)(5)(B), (b)(2) ................................................................... 2

18 U.S.C. § 3583(e)(1) ...................................................................................... 1, 3

# TABLE OF AUTHORITIES

**(Pages)**

**Other Authorities**

Alicia Caldwell Jimenez, et al., *Validation and Application of the LS/CMI in Nebraska Probation* 45 CRIM. JUST. & BEHAV. 863, 880-82............................7

Effects of Aging on Recidivism Among Federal Offenders, U.S. Sentencing Comm'n, at 30 (Dec. 2017), *available at* https://tinyurl.com/USSC-recidivism ...........................................................6

Ronald Roesch, FORENSIC PSYCHOLOGY AND THE LAW, 282-283 (2010)........................7

iii

## **NOTICE OF MOTION**

TO THE ACTING UNITED STATES ATTORNEY AND COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, as soon as this matter may be heard, Miguel Alexander Franco-Lara hereby moves for early termination of his supervised release term pursuant to 18 U.S.C. § 3583(e)(1). This motion is based on the attached memorandum of points and authorities, declaration, and exhibits, the files and records in this case, and any other argument or evidence that the Court may consider.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 27, 2022        By   */s/ Jelani J. Lindsey*
                                    JELANI J. LINDSEY
                                    Deputy Federal Public Defender
                                    Attorney for Miguel Alexander Franco-Lara

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. INTRODUCTION

At 54-years old, with a minimal criminal history, and a record of compliance during pretrial and supervised release, Mr. Franco-Lara is highly unlikely to recidivate. This is especially true given Mr. Franco-Lara's support system, which primarily includes his tightly-knit family. His support system holds him accountable, and Mr. Franco-Lara understands there will be serious consequences if he recidivates.

Early termination will eliminate a significant burden from Mr. Franco-Lara's life. Mr. Franco-Lara is employed as a long-haul truck driver. Early termination of his supervised release would allow him to make dedicated runs out of state and earn more money. He lives within the District of Nevada, and early termination would also allow him more freedom to travel to Los Angeles and visit his elderly mother and sister without having to ask for advance permission. Additionally, early termination would allow him to spend more time with his grandchildren and assist his sons and daughter-in-law with the rearing of his grandchildren.

## II. BACKGROUND

On March 25, 2013, a criminal complaint alleging a violation of 18 U.S.C. § 2242(b): Coercion and Enticement was filed against Mr. Franco-Lara. Dkt.1.

Mr. Franco-Lara made his initial appearance before the Court on April 1, 2013. Dkt. 3. He was granted bail on a $175,000 appearance bond and released from custody on April 8, 2013. Dkt. 13.

On April 30, 2013, a single-count information was filed against Mr. Franco-Lara alleging that he violated 18 U.S.C. §§ 2252(A)(a)(5)(B), (b)(2): Possession of Child Pornography. Dkt. 20. Mr. Franco-Lara pled guilty to Possession of Child Pornography on May 14, 2013. Dkt. 28. On September 9, 2013, the Court sentenced Mr. Franco-Lara to a term of 30 months in custody followed by a Supervised Release term of ten years. Dkt. 30.

1    To date, Mr. Franco-Lara has completed approximately six years of supervised
2    release during which time he has had no violations.

3    ### III. ARGUMENT

4    "The court may, after considering the factors set forth in section 3553(a) . . .
5    terminate a term of supervised release and discharge the defendant released at any time
6    after the expiration of one year of supervised release . . . if it is satisfied that such action
7    is warranted by the conduct of the defendant released and the interest of justice."18
8    U.S.C. § 3583(e)(1). "A district court, however, need not tick off each of the § 3553(a)
9    factors to show that it has considered them." *United States v. Suibin Zhang*, No. 05-CR-
10   00812-RMW-1, 2018 WL 11203669, at *3 (N.D. Cal. Jan. 26, 2018) (citation omitted).
11   Rather, "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice'
12   make clear that a district court maintains discretion to consider a wide range of
13   circumstances when determining whether to grant early termination." *United States v.*
14   *Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

15   Here, the Court has authority to grant early termination because Mr. Franco-Lara
16   has been on supervised release for more than one year. 18 U.S.C. § 3583(e)(1). In fact,
17   he is over halfway into his ten-year term. *See United States v. Brown*, No. 3:10-CR-
18   418, 2021 WL 2324676, at *1 (N.D. Ohio June 2, 2021) (granting early termination to
19   defendant convicted of possession of child pornography just over halfway into his 15-
20   year supervised release term); *United States v. McGovern,* 438 F. Supp. 3d 136 (D.P.R.
21   2020) (reducing lifetime term of supervised release term to five years for defendant
22   convicted of possession of child pornography). "[B]y no means does 18 U.S.C. §
23   3583(e)(1), or the statutory factors set forth therein, constrain a court's discretion to
24   grant early termination to only those situations in which a person has exhibited
25   'exceptional behavior.'" *United States v. Shaw*, 445 F. Supp. 3d 1160, 1166 (D. Colo.
26   2020); *accord United States v. Harris*, 258 F. Supp. 3d 137, 149–50 (D.D.C. 2017)
27   ("construing § 3583(e)(1) to require the defendant to exhibit objectively extraordinary
28   or unusual conduct during supervision is a stretch not expressed in the statutory text").

3

*United States v. Mauldin*, No. CR 18-371 (BAH), 2020 WL 2840055, at *3 (D.D.C. June 1, 2020) ("No extraordinary or unusual conduct during supervision is required to meet this standard."). Rather, "a change in circumstances or exceptionally good behavior is . . . one factor that may be considered." *Zhang*, 2018 WL 11203669, at *3. Thus, in *Mauldin*, a defendant convicted for possession of child pornography and sentenced to lifetime supervised release received early termination after ten years because he "complied with all the conditions of his supervised release and [did] not recidivate[], as confirmed by the daily computer monitoring and random searches upon reasonable suspicion to which he has been subjected." *Id*. at *3–4. Similarly, in *Raymond*, a defendant convicted for possession of child pornography and sentenced to ten years of supervised release received early termination after five and a half years because he "passed every polygraph test, passed every drug test, completed all therapy required of him, never missed a meeting with his probation officer, and maintained computer monitoring, at his own expense, without any violations." *United States v. Raymond*, No. CR 09-183 (RMC), 2019 WL 1858285, at *1 (D.D.C. Apr. 25, 2019).

As detailed below, early termination is warranted here because (1) of his conduct, (2) he is unlikely to recidivate, (3) early termination will benefit Mr. Franco-Lara's financial circumstances, (4) and forgiveness promotes the interest of justice.

**A.    Mr. Franco-Lara's Post-Release Conduct Warrants Early Termination.**

Mr. Franco-Lara's conduct warrants early termination. Indeed, he has not had any violations during pretrial or supervised release. (Lindsey Decl. ¶ 2.) Just like in *Mauldin*, where early termination was warranted because the defendant had no violations and complied with random searches and computer monitoring, here, early termination is warranted because Mr. Franco-Lara has had no violations and is in compliance with his supervised release conditions. 2020 WL 2840055, at *3; (Decl. ¶ 2; Dkt. ¶ 7.) Further, Mr. Franco-Lara's conduct warrants early termination because he has passed every polygraph test and completed group therapy. (Lindsey Decl. ¶ 2.); *see Raymond*, 2019 WL 1858285, at *1 (granting early termination where the defendant

4

passed every polygraph test, completed therapy, and maintained computer monitoring at his own expense without any violations.)

**B.  Mr. Franco-Lara Has Fully Reintegrated into Society with a Support Systems Separate from the United States Probation Officer.**

Mr. Franco-Lara no longer needs the support of the United States Probation Office ("USPO") because he has fully reintegrated. *See United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) ("the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them"). This is evident from his conduct since his supervised release term began because he has a strong support systems that hold him accountable separate and apart from USPO services: his family. He does not want to let his family down, especially his grandchildren. He strives to be a constant, stable influence in his grandchildren's lives.

**1.  Mr. Franco-Lara's Conduct Provides Strong Evidence That He Will Not Recidivate.**

Mr. Franco-Lara's conduct is "highly probative" that he will not recidivate. *Mauldin*, 2020 WL 2840055, at *3. "Indeed, the Sentencing Commission's analysis of supervised release recidivism rates found that violations of conditions of supervision that result in revocation on average occur early in the supervision process . . . in 2006, offenders whose supervision was revoked served an average of only 17 months before revocation." *Id.* Mr. Franco-Lara, on the other hand, has already been on supervised release for approximately six years. "[His] maintenance of an unblemished record of compliance with his conditions of release for [more than five] years is, perhaps, the best indicator of his ability to continue as a law-abiding member of his community." *United States v. Harris*, 258 F. Supp. 3d 137, 139–40 (D.D.C. 2017) (granting early termination to defendant five years into ten-year term of supervised release who had no violations).

5

### 2.    Mr. Franco-Lara Is Unlikely to Recidivate Because He Is 54 Years Old, Has a Minimal Criminal History, and Must Continue to Register as a Sex Offender.

At the age of 54, with an exemplary probationary record and minimal criminal history aside from this conviction, it is patently unlikely that Mr. Franco-Lara will recidivate. Indeed, "older offenders are substantially less likely to recidivate following release compared to younger cohorts." The Effects of Aging on Recidivism Among Federal Offenders, U.S. Sentencing Comm'n, at 30 (Dec. 2017), *available at* https://tinyurl.com/USSC-recidivism. Specifically, only 26.8% of those 50 to 59 years old recidivate:



*Id.*

Mr. Franco-Lara has a minimal criminal history. Dkt. 30 ¶ 31. Besides the instant offense, he only has two other criminal convictions. *Id.* He sustained his first criminal conviction more than 35 years ago, and he sustained his second conviction more than 23 years ago. *Id.* ¶¶ 28-29. Given the ages of these convictions and the fact that they were and still are too old to be accessed any criminal history points under the

6

1    Sentencing Guidelines, the Court should give little weight to these two convictions
2    when deciding whether to grant Mr. Franco-Lara's request.

3         Additionally, Mr. Franco-Lara's scoring on the risk assessment tools used by the
4    USPO should not dissuade the Court from granting Mr. Franco-Lara's request. The
5    USPO has utilized five assessment tools to evaluate Mr. Franco-Lara's risk of
6    recidivism: (1) The Level of Service/Case Management Inventory (LS/CMI); (2) Static-
7    99R; (3) Stable-2007; (4) Acute 2007; and (5) Post Conviction Risk Assessment
8    (PCRA). He scored as a low-moderate risk on the Static-99R, a low risk on the Stable-
9    2007, and a low-risk on the Acute 2007. He is considered a medium risk on the
10   LS/CMI and a moderate risk on the PCRA. However, the validity of the LS/CMI and
11   PCRA have been called into question by social scientists.

12        The validity of the of the LS/CMI as an accurate assessment tool has been called
13   into question by some studies. *See* Alicia Caldwell Jimenez, et al., *Validation and*
14   *Application of the LS/CMI in Nebraska Probation* 45 CRIM. JUST. & BEHAV. 863, 880-
15   82 (finding that the LS/CMI scoring only has moderate predictive value and disparate
16   predictive value for minorities). Another study contends that the LS/CMI utilizes a
17   simplistic definition of risk, which cannot accurately predict an offender's risk of
18   recidivism for specific types of crimes. Ronald Roesch, FORENSIC PSYCHOLOGY AND
19   THE LAW, 282-283 (2010). Lastly, even the validity of the PCRA has been called into
20   question by at least one study. *See* Xiaohan Mei, Offender Risk and Needs Assessment
21   Construction, Validation and Application (2018) (published Ph.D. dissertation,
22   Washington State University) (noting that "[some] important validity criteria [of the
23   PCRA] [have] not [been] examined, reported, and documented [,] including
24   reliability/internal consistency, the internal latent structure of the instrument, the
25   convergent/divergent validity, and concurrent validity.").

26        Mr. Franco-Lara's scores on the LS/CMI and PCRA assessments do not
27   accurately predict his risk of recidivism. The assessments do not take into account his
28   family support system and his desire to be a constant, stable presence in the lives of

family members, particularly his grandchildren. The love and support of his family has motivated him to remain complaint while he has been on supervision, and it will motivate him to not reoffend once his off of supervised release.

Furthermore, "even if [Mr. Franco-Lara's] supervised release is terminated early, he will nevertheless have to continue to register as a sex offender." *McGovern*, 438 F. Supp. 3d at 142. (D.P.R. 2020). Thus, in *McGovern*, early termination was warranted for a defendant convicted for possession of child pornography because he was 70 years old, had to continue to register as a sex offender, and had no other criminal history. *Id*. at 142-43. Similarly, early termination is warranted here for Mr. Franco-Lara because he is 54, will continue to register as a sex offender, and has a minimal criminal history. These facts mitigate against the risk of recidivism for Mr. Franco-Lara.

### 3.   Mr. Franco-Lara's Support System Will Ensure That He Does Not Recidivate.

Mr. Franco-Lara is closely connected to his family. *See Shaw*, 445 F. Supp. 3d at 1166 (finding that strong family relationships demonstrate a motivation to remain a law-abiding citizen beyond the term of supervised release). He is close with his mother and sister, both of whom reside in Los Angeles. *See* Exhibit A, Marta Salazar Letter ("I grew up with Miguel and we have a very special bond as brother and sister.") He is very close with his adult sons, Bryan and Kevin, and daughter-in-law, Jennea. *See* Exhibits B and D, Kevin Franco Letter & Jennea Moran Letter. He is especially close with Kevin and Jennea's children, Mr. Franco-Lara's grandchildren. He is truly a "loving grandpa" that "provides support in whatever capacity his [grandchildren] need." Exhibit D. His son Bryan describes him as the "best Grandfather in the whole world." Exhibit C, Bryan Franco Letter. The love and support of his family motivates Mr. Franco-Lara to be a law-abiding citizen.

In sum, supervision is no longer necessary. Mr. Franco-Lara has proven he can be successful without the USPO's services. The USPO should utilize its limited

resources to help those who still need help reintegrating into society. *See Zhang*, 2018 WL 11203669, at *5 ("Policy considerations suggest that the public will benefit by redirecting officers to focus on other high-risk offenders.")

**C.     Forgiveness Is in the Interests of Justice**

"Forgiveness is a moral quality and a social good, and is important to a system of restorative justice." *United States v. Cunningham*, No. 05CR2137-LAB, 2014 WL 3002207, at *2 (S.D. Cal. July 1, 2014) (granting early termination). "At some point, once justice has been served, the system must take care to avoid erecting roadblocks that might prevent an offender from reintegrating into society and becoming a productive and useful citizen again." *Id.*

Now is the time to forgive Mr. Franco-Lara. He is 54 years old. He has done what he needed to do to rehabilitate himself. He takes full responsibility for the wrongfulness of his actions. He has taken affirmative steps to atone for them by trying to be the best father and grandfather he can be, which has required that he remain compliant with the terms and conditions of supervised release. Additionally, as stated earlier, "[e]ven though [he] will no longer remain under supervised release . . . [e]verywhere [he] travels, everywhere [he] works and goes, [he] must register and notify the proper authorities, or [he] faces serious criminal charges." *Lopez-Correa*, 164 F. Supp. 3d at 269. But forgiveness will permit him to move forward with his supportive family without the "significant burden[]" of supervised release, which prevents him from freely visiting his mother and sister in Los Angeles and making money outside of the District of Nevada as a long-haul truck driver. *United States v. Michaels*, No. CR.A. 93-215-01, 2001 WL 1486215, at *1 (E.D. Pa. Nov. 6, 2001).

Forgiveness will allow to spend time with his mother and sister in Los Angeles. It will allow more of an opportunity to cultivate his relationship with his grandchildren, who he adores—and they, in turn, adore him. *See* Exhibit C ("Nothing makes me happier than the happiness on all three of my kids' faces when they get to see their grandpa.") and Exhibit D ("[M]y kids are not lacking any love because Miguel gives

9

1  my kids more than enough.") Additionally, it will allow Mr. Franco-Lara the
2  opportunity to make more money as a long-haul truck driver doing out of state runs.
3      In short, forgiveness is in the interest of justice.

4  **IV. CONCLUSION**

5      In a word, [home confinement] and supervised release [] have
6  served their ultimate purposes—namely, to cause [Mr. Franco-
7  Lara], even where he has committed a very serious crime—to
8  return to society as a productive and law-abiding citizen. To
9  continue him on supervised release at this point [would] serve
10  very little purpose except to underscore abhorrence about his
11  crime. Personal deterrence [has] been accomplished. Were he
12  to reoffend, he would receive a very substantial sentence, far
13  more substantial than that which he has received and served.
14  That risk . . . given [Mr. Franco-Lara's] accomplishments and
15  circumstances . . . serve[s] the purpose of individual deterrence
16  far more effectively than continued court supervision.

17  *Brown*, 2021 WL 2324676, at *1. Thus, Mr. Franco-Lara respectfully requests early
18  termination of his supervised release term.

20  Respectfully submitted,

21  CUAUHTEMOC ORTEGA
Federal Public Defender

23  DATED:  October 27, 2022    By  */s/ Jelani J. Lindsey*
24  JELANI J. LINDSEY
Deputy Federal Public Defender

10