E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DEREK R. FLORES (Cal. Bar No. 304499)
Assistant United States Attorney
General Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4896
Facsimile: (213) 894-0141
Email: derek.flores@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MIGUEL ALEXANDER FRANC LARA,

Defendant.

No. 5:13-CR-0034-VAP

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. 39)

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Derek R. Flores, hereby files its Opposition to Defendant Miguel Alexander Franc Lara's ("defendant's") Motion for Early Termination of Supervised Release, (Dkt. 39).

This Opposition is based upon the attached memorandum of points

//

//

//

//

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 17, 2022

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

DEREK R. FLORES
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION PAGE

I. INTRODUCTION....................1

II. FACTUAL AND PROCEDERUAL BACKGROUND....................2

III. LEGAL STANDARD....................3

IV. ARGUMENT....................5

A. Defendant's Conduct and History Do Not Warrant Early Termination of Supervised Release....................6

B. Continued Supervision will Appropriately Deter Criminal Conduct and Protect the Public....................7

C. A 10-Year Term of Supervised Release Continues to Be Appropriate in this Case....................11

V. CONCLUSION....................13

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**CASES**


Folks v. United States, 733 F. Supp. 2d 649 (M.D.N.C. 2010) ..................... 4, 5, 13

Shchupak v. United States, 2007 WL 3118304 (S.D.N.Y. Oct. 19, 2007) .................. 12, 13

United States v. Caruso, 241 F. Supp. 2d 466 (D.N.J. 2003) .............................. 2

United States v. Cunningham, 680 F. Supp. 2d 844 (N.D. Ohio 2010) ........................... 6

United States v. Emmett, 749 F.3d 817 (9th Cir. 2014) .................................. 5

United States v. Harris, 258 F. Supp. 3d 137 (D.D.C. 2017) .............................. 5

United States v. King, 2009 WL 130114 (D. Minn. Jan. 20, 2009) ....................... 12

United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997) ................................ 4

United States v. Mauldin, 2020 WL 2840055 (D.D.C. June 1, 2020) ................... 5, 8, 9

United States v. McGovern, 438 F. Supp. 3d 136 (D.P.R. 2020) ......................... 9, 10

United States v. McKay, 352 F. Supp. 2d 359 (E.D.N.Y. 2005) ........................ 4, 5

United States v. Miller, 205 F.3d 1098 (9th Cir. 2000) ............................ 4, 5

United States v. Ponce, 22 F.4th 1045 (9th Cir. 2022) ................................ 5

United States v. Shaw, 445 F. Supp. 3d 1160 (D. Colo. 2020) ........................... 5

United States v. Weber, 451 F.3d 552 (9th Cir. 2006) ................................ 3-4

United States v. Weintraub, 371 F. Supp. 2d 164 (D. Conn. 2005) ........................ 4-5

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION PAGE

United States v. Zhang, 2018 WL 11203669 (N.D. Cal. Jan. 26, 2018) .................... 5

**STATUTES**

18 U.S.C. § 2252A ........................................ 3, 11

18 U.S.C. § 3553 ................................ 3, 5, 6, 7, 11

18 U.S.C. § 3564 ............................................ 4

18 U.S.C. § 3583 ................................ 2, 3, 4, 5, 11

34 U.S.C. § 20911 ........................................... 9

34 U.S.C. § 20915 ........................................ 9, 10

**OTHER**

U.S.S.G. § 5D1.2 ......................................... 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In 2013, defendant pled guilty to possession of child sexual abuse material. (See Dkts. 20, 28.) Defendant had begun a romantic relationship with a then 15-year-old child victim ("C.V.") in Nevada, had sexual intercourse with C.V. on at least two separate occasions, and possessed approximately five images of child sexual abuse material depicting C.V.'s genitals and anus on his phone when he traveled to California intending to have sexual intercourse with C.V. (Dkt. 30 ("PSR") ¶¶ 6-7.)

The government and defendant jointly recommended a 30-month custodial sentence -- well below the 41-to-56-month guideline range and the 41 months recommended by the United States Probation and Pretrial Services Office for the Central District of California ("Probation"). (Dkt. 29 at 1; Dkt. 31 at 2; Dkt. 32 at 3.) This Court agreed with the parties and sentenced defendant to 30 months' detention, followed by 10 years of supervised release. (See Dkt. 35.)

After serving a little more than half his supervised release term, defendant now moves for early termination of that supervised release. (Dkt. 39 ("Mot.").) Defendant primarily argues that (1) he is unlikely to recidivate because he has complied with pretrial and supervised release and his family holds him accountable, and (2) termination of supervised release would allow him to more easily travel out of his state of residence (Nevada) to work and visit family.

The government acknowledges and applauds defendant's successes to date but opposes his request for two reasons:

First, full compliance with the terms of supervised release is what is expected of a person on supervised release and does not warrant early termination. See, e.g., United States v. Caruso, 241 F. Supp. 2d 466, 469 (D.N.J. 2003) ("mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination" (citations omitted)). And defendant has presented no evidence that supervised release poses an undue hardship on his work or personal life.

Second, the nature and circumstances of defendant's offense remain serious and reducing defendant's sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment of the offense, or serve as a deterrent to others. See 18 U.S.C. § 3583(e)(1); id. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7). Defendant already received a substantial downward variance in his custodial term at sentencing.

## II. FACTUAL AND PROCEDERUAL BACKGROUND

In 2012, defendant began a romantic relationship with a then 15-year-old child victim ("C.V.") in Nevada while defendant was approximately 44 years old. (PSR ¶ 6.) Over time, defendant's relationship with C.V. included exchanging explicit nude photographs of each other and at least two separate instances of sexual intercourse. (Id.) In 2013, C.V.'s parents attempted to end the relationship by moving C.V. to California. (Id.) Defendant then traveled from Nevada to California to have sexual intercourse with C.V., who was then 16 years old. (Id. ¶ 7.) The day that defendant went to meet C.V., he possessed approximately five images of child

sexual abuse material depicting C.V.'s genitals and anus on his cell phone. (Id.)

For this conduct, defendant was charged with and pled guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2). (Dkts. 20, 28.) Defendant's guidelines range was 41 to 51 months' imprisonment and five years' to lifetime supervised release. (PSR ¶¶ 78-81.) Probation recommended 41 months' imprisonment followed by 10 years' supervised release. (Dkt. 29 at 1.) The government and defendant jointly recommended a below guidelines custodial sentence of 30 months; the government recommended 10 years' supervised release and defendant's sentencing papers did not take a position on supervised release. (Dkt. 31 at 2, 4; 32 at 3.)

Defendant has been on supervised release since approximately 2016. His supervised-release term expires in approximately 2026. On October 27, 2022, defendant filed a motion for early termination of supervised release. (See Mot.)

**III. LEGAL STANDARD**

Before terminating supervised release, the Court must be "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice," taking into consideration certain enumerated 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3583(e)(1).

Defendant has the burden to establish that defendant is entitled to the rarely granted remedy of early termination of supervised release. United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) ("courts have required the defendant, as the party receiving

the benefit of early termination, to demonstrate that such a course of action is justified" (citations omitted)).

Defendant is not entitled to early termination merely because he is complying with the terms of his release. As the Ninth Circuit observed:

> Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances. Occasionally, changed circumstances - for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution as conditions of release - will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3583(e)(2).

United States v. Miller, 205 F.3d 1098, 1001 (9th Cir. 2000) (quoting United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997)).

Although Miller and Lussier construed Section 3583(e) in the context of requests to modify conditions of supervised release under 3583(e)(2), the same principles have been widely adopted by courts in the context of requests for early termination of supervised release under 3583(e)(1) and for early termination of probation under 18 U.S.C. § 3564(c). See, e.g., United States v. Weintraub, 371 F. Supp. 2d 164, 166-67 (D. Conn. 2005); United States v. McKay, 352 F. Supp. 2d 359, 360-61 (E.D.N.Y. 2005)); Folks v. United States, 733 F. Supp. 2d 649, 650-51 (M.D.N.C. 2010).

For that reason, full compliance with the terms of supervised release is what is expected of a person on supervised release and does not warrant early termination. If full compliance were sufficient, "the exception would swallow the rule." Folks, 733 F. Supp. 2d at 649, 652; Weintraub, 371 F. Supp. 2d at 167 ("Although [the defendant's] ongoing and full compliance with all conditions of

supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required of all criminal defendants and is not a basis for early termination of his supervised release." (citation omitted)).

In sum, "early termination is not warranted as a matter of course; on the contrary, it is only 'occasionally' justified due to 'changed circumstances' of a defendant, such as 'exceptionally good behavior.'" McKay, 352 F. Supp. 2d at 361; Folks, 733 F.Supp. 2d at 651 ("exceptionally good behavior" is that which "makes the previously imposed term of supervised release either too harsh or inappropriately tailored to serve general punishment goals.").[1]

**IV. ARGUMENT**

As this Court found at sentencing, the 18 U.S.C. § 3553(a) factors support the Court's original sentence of 10 years' supervised release. In considering defendant's motion for early termination, the Court must consider several of those same factors pursuant to 18 U.S.C. § 3583(e). They continue to weigh in favor of 10 years' supervised release.

---

[1] Defendant cites several district court orders for the proposition that he need not demonstrate "exceptional behavior." (See Mot. 3-4 (citing United States v. Shaw, 445 F. Supp. 3d 1160, 1166 (D. Colo. 2020); United States v. Mauldin, 2020 WL 2840055, at *3 (D.D.C. June 1, 2020); United States v. Harris, 258 F. Supp. 3d 137, 149-50 (D.D.C. 2017); United States v. Zhang, 2018 WL 11203669, at *3 (N.D. Cal. Jan. 26, 2018).) While it is true that "exceptional behavior" is not required, see United States v. Ponce, 22 F.4th 1045, 1047 (9th Cir. 2022), that does not change the fact that early termination is only "[o]ccasionally" warranted. Miller, 205 F.3d at 1101; see also United States v. Emmett, 749 F.3d 817, 824 (9th Cir. 2014) (Nguyen, J., dissenting) ("It is defendant's burden to establish that he is entitled to the rarely-granted remedy of early termination of supervised release. . . . To be sure, changed circumstances are not necessarily required to warrant early termination—but that is so merely to preserve district courts' discretion, not to relieve defendants of their burden." (emphasis added and citations omitted)).

**A. Defendant's Conduct and History Do Not Warrant Early Termination of Supervised Release**

"[T]he nature and circumstances of the offense and the history and characteristics of the defendant" reinforce the necessity and reasonableness of requiring defendant to complete the full term of his supervised release. 18 U.S.C. § 3553(a)(1). Defendant's crime was serious and concerning. Defendant began a romantic relationship with C.V. when C.V. was 15 years old and then possessed approximately five images of child sexual abuse material depicting C.V.'s genitals and anus. (PSR ¶ 7.)

Further, the risk of recidivism posed by child sexual abuse material offenders is uniquely high and enduring. "The predicted odds of recidivism increased by 177% among the offenders that viewed deviant pornography, such as child pornography. Moreover, the predicted odds of violent recidivism, including sexually violent recidivism, increased by 185% for this group. The predicted odds of any type of sexual recidivism increased by 233% for the group that admitted to viewing deviant pornography." Kingston, Drew, et al., Pornography use and sexual aggression: the impact of frequency and type of pornography use on recidivism among sexual offenders. Aggress Behavior, vol. 34 (2008) doi: 10.1002/ab.20250., PMID: 18307171., (cited by United States v. Cunningham, 680 F. Supp. 2d 844, 855-56 (N.D. Ohio 2010)). This Court need not rely on probabilities alone to conclude that defendant poses a risk of recidivism as at least two of Probation's assessments have determined that he is either a "medium" or "moderate" risk of recidivism. (See Mot. at 7.) Such a risk is particularly relevant here where defendant had sexual contact with

the minor victim in addition to possessing multiple images of child sexual abuse material. (See PSR ¶¶ 6-7.)

**B. Continued Supervision will Appropriately Deter Criminal Conduct and Protect the Public**

Continued supervision will also "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Defendant's lack of recidivism while on supervision thus far does not negate the importance or value that supervision has on deterring criminal conduct. Defendant continuing to report to probation and treatment, in conjunction with polygraph tests, provides structure and accountability that helps deter him from reoffending. (See Dkt. 39-1 ¶ 2 (defendant's probation officer explained that he "has to submit to polygraph testing semi-annually" and that he "receives individual treatment sessions quarterly").) Keeping defendant on this productive path for the remainder of his 10-year term of supervised release will serve defendant and society alike, especially its most vulnerable young members. Continuing to actively deter defendant from committing additional crimes also serves "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Defendant argues that he is unlikely to recidivate because (1) his prior criminal convictions are dated, (2) offenders are more likely to recidivate earlier in the supervision process, and (3) he has the support of his family. (See Mot. at 5-9.) None of these factors warrant early termination.

Contrary to defendant's arguments, the "age[ ] of [defendant's] convictions" demonstrate that he still has a substantial risk of recidivism and remains a substantial risk to society. (Cf. Mot. at 6.) While defendant's prior convictions are dated, the length of time

between each of his convictions (1987, 1999, and 2013) demonstrate that defendant may recidivate many years after a prior offense. That other offenders may be more likely to recidivate earlier in the supervision process, (see Mot. at 5 (citing Mauldin, 2020 WL 2840055, at *3)), is therefore not relevant here where defendant has recidivated many years after each of his prior convictions.

In arguing that he has a low risk of recidivism, defendant also appears to cite the wrong statistic from the United States Sentencing's 2017 recidivism report. (See Mot. at 6 (citing United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf).) Defendant notes that he is currently 54 years old and that the 50-to-59-years-old cohort in that report had a 26.8% recidivism rate within 8 years. (See id.) But the cohorts in the table and figure defendant cites are based on age at time of release, not age at time of recidivism. Cf., e.g., The Effects of Aging on Recidivism Among Federal Offenders at 30 ("Offenders who were younger than 30 when they were released had the shortest median time to rearrest (17 months). Conversely, the oldest offenders in the study, those 60 years and older, had the longest time to rearrest (28 months)." (emphasis added)). Even assuming that the offenders in that report are statistically representative of defendant (which defendant has not proven), the cohort that defendant would fall into would be age

40 to 49 years at time of release,[2] who had a 43.2% 8-year recidivism rate. See id.

Nor does the fact that defendant must "register as a sex offender" weigh in favor of early termination. (Cf. Mot. at 8.)[3] While tier I sex offenders are generally required to register for 15 years following release from custody, see 34 U.S.C. §§ 20911(2), 20915(a)(1), defendant's supervised release conditions go far beyond the registration requirements. And those conditions both protect the public and reduce the risk that defendant will recidivate. For example, defendant's supervised release conditions prohibit him from contacting or getting close to the victim and from viewing or possessing "sexually explicit" materials. (Dkt. 35 at 3.) These conditions are still warranted and the mere requirement to register as a sex offender is no substitute.

Defendant's reliance on the district court order in United States v. McGovern, 438 F. Supp. 3d 136 (D.P.R. 2020), is also misplaced. There the court reduced a lifetime period of supervised release to just five years because there was "complete lack of support in the record for a lifetime sentence of supervised release." McGovern, 438 F. Supp. 3d at 142. And the court noted "even if the defendant's supervised release is terminated early, he will

---

[2] Defendant was approximately 47 years old when released from BOP custody. See Federal Bureau of Prisons, Inmate Locator, available at https://www.bop.gov/inmateloc/ (defendant is Register Number 64604-112 and was released on January 8, 2016); (PSR at 2 (defendant was born in mid-1968)).

[3] It is also possible that the period that defendant would have to register as a sex offender could be reduced if early termination were granted. See 34 U.S.C. § 20915(b)(1) (reducing the registration period for a tier 1 sex offender from 15 years to 10 years if, among other things, the offender has "successfully complet[ed] any periods of supervised release").

nevertheless have to continue to register as a sex offender for a period of at least 15 years from the date of his release from prison." Id. Neither are the case here. Here there was and is (as this Court found at sentencing) support for a 10-year supervised release term considering defendant's risk of recidivism and risk to the community. (See Dkt 35.) And, unlike the defendant in McGovern, there is the possibility that defendant's sex offender registration period could be reduced below 15 years if early termination were granted. See 34 U.S.C. § 20915(b)(1).

Finally, Defendant's family ties do not warrant early termination of supervised release. (Cf. Mot. at 5 (arguing that defendant "has strong support systems that hold him accountable separate and apart from USPO services: his family"); id. at 7-8 (arguing that defendant's "LS/CMI and PCRA assessments do not accurately predict his risk of recidivism" because they "do not take into account his family support system").) That is because defendant's family circumstances have not materially changed: defendant presented evidence that he had a stable and supportive family at the time he committed the original offense in 2013 and when he was sentenced in 2018, just as he does now. (See Dkt. 32 at 13 (defendant arguing in 2018 that he "was, and remains, very close to his family, and they continue to support him"); compare id., Exs. B-G (2018 letters submitted by defendant's sisters, mother, wife, and nieces); with Mot., Exs. A-D (2022 letters submitted by defendant's brother, sons, and daughter-in-law).) Contrary to defendant's argument, there is no evidence that defendant's family makes him less likely to recidivate as he appears to have similar family support now to what he had when he possessed C.V.'s child sexual abuse materials.

**C. A 10-Year Term of Supervised Release Continues to Be Appropriate in this Case**

The Court appropriately imposed a 10-year term of supervised release which fell within the Guidelines range of five years to life. (See PSR ¶ 81.) Congress specifically intended for the term of supervised release for sexual offenses to be longer than other felonies. See 18 U.S.C. § 3583(k) (maximum term of supervised release for various sex offenses, including violations of 18 U.S.C. § 2252A, is life, with a mandatory minimum of five years).

This intent is similarly reflected in the policy statements by the United States Sentencing Commission. See id. § 3553(a)(5) (requiring consideration of "any pertinent policy statement . . . issued by the Sentencing Commission"). The Sentencing Guidelines recommend imposition of the maximum term of life supervision for any defendant who has committed a sex offense:[4] "If the instant offense of conviction is a sex offense, the statutory maximum term [life] of supervised release is recommended." U.S.S.G. § 5D1.2(b)(2). As Congress has explicitly recognized, recidivism rates for sex offenders do not appreciably decline as offenders age. See H.R. Rep. 107-527 (discussing lifetime supervised release for sexual offenders). Defendant already received leniency when this Court imposed a term of ten years' supervised release, which is well below the lifetime term recommended by the guidelines policy statement. He

[4] Application Note 1 to U.S.S.G. § 5D1.2 defines a "sex offense" to mean an offense perpetrated against a minor under chapter 109A or 110 of Title 18 of the United States Code. A violation of 18 U.S.C. § 2252A is included as part of chapter 110. Thus, defendant's conviction for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), is a sex offense.

should not receive a further windfall for merely complying with the terms of the supervision imposed.

Defendant has not shown any significant change in circumstances from when the Court imposed ten years' supervised release. When defendant was sentenced, the Court had ample evidence about the defendant's family, defendant's work history, and letters speaking to defendant's character. (See PSR ¶¶ 38-47; Dkt. 32, Exs. B-G.) More importantly, his supervision has not been an impediment to him maintaining and developing relationships with out-of-state family or finding and maintaining employment as a long-haul truck driver while on supervision. (See Mot. at 9.) Defendant argues that early termination would allow to him to more "freely" visit family and work outside of Nevada, but he does not indicate that he has in any way been prevented from traveling out of state. (Id.) Indeed, defendant is permitted to travel outside Nevada while under supervised release if he obtains written permission from his probation officer. (Dkt. 35 at 5("defendant shall not leave the judicial district without the written permission of the court or probation officer")); see also United States v. King, 2009 WL 130114, at *1 (D. Minn. Jan. 20, 2009) (presuming that the probation office will make "reasonable accommodations" for a defendant's good-faith travel requests). Even if there is some hardship to defendant, that alone "is an insufficient basis to upset the sentence arrived at by this Court." Shchupak v. United States, 2007 WL 3118304, at *4 (S.D.N.Y. Oct. 19, 2007) (denying motion for early termination of supervised release).

While not mandatory to establish that the interests of justice support early termination of supervised release, courts have considered relevant a defendant's undue hardship or changed

circumstances. See, e.g., id. The success that defendant has had while on supervised release is to be commended, but it does not demand or support an alteration to defendant's sentence. Rather, it is the very type of behavior expected of those on supervised release: abiding by the terms of supervision, maintaining employment, and going to treatment. See, e.g., Folks, 733 F. Supp. 2d at 652 (otherwise the "exception would swallow the rule").

Defendant has not met his burden to establish that his conduct and the interests of justice support termination of his supervised release before its completion. Defendant has not demonstrated undue hardship nor deteriorative effects of his continued supervision. Defendant's continued supervision not only benefits society, but also defendant through continued support and deterrence. In sum, the factors and circumstances weigh in favor of defendant's continued supervision.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion for early termination of supervised release.

Dated: November 17, 2022

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

DEREK R. FLORES
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA